# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORIA G. CASTILLO, Trustee of the Gregoria G. Castillo Separate Property Trust; GREGORIA G. CASTILLO SEPARATE PROPERTY TRUST,<br><br>                        Plaintiffs,<br><br>  v.<br><br>BANK OF AMERICA, N.A.; BANK OF NEW YORK MELLON, Alternative Loan Trust 2006-OA2 Mortgage Pass-Through Certificates, Series 2006-OA2, FKA Bank of New York, As Trustee for the Certificateholders of the CWalt, Inc..; DOES 1 THROUGH 100, inclusive,<br><br>                        Defendants. | CASE NO. 12cv1833 - IEG (BGS)<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFFS' MOTION TO REMAND [DOC. NO. 6];**<br><br>**(2) GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [DOC. NO. 4];**<br><br>**(3) REMANDING STATE LAW CLAIMS;**<br><br>**AND**<br><br>**(4) DENYING AS MOOT DEFENDANTS' MOTIONS TO STRIKE AND TO EXPUNGE *LIS PENDENS* [DOC. NO. 4]** |

      Presently before the Court are Defendants Bank of America, N.A. ("BANA") and Bank of New York Mellon's ("BNYM") (together "Defendants") motions to dismiss the complaint of Plaintiffs Gregoria G. Castillo ("Castillo") and Gregoria G. Castillo Separate Property Trust's ("Trust") (together "Plaintiffs"), to strike, and to expunge the *lis pendens*. [Doc. No. 4.] Also before the Court is Plaintiffs' motion to remand. [Doc. No. 6.] For the following reasons, the Court **DENIES** Plaintiffs' motion to remand, **GRANTS** in part Defendants' motion to dismiss,

1  **REMANDS** Plaintiffs' state law claims, and **DENIES AS MOOT** Defendants' motions to strike
2  and to expunge the *lis pendens*.

## BACKGROUND

Plaintiffs allege that on or about January 25, 2006, Plaintiff Castillo obtained a loan from Countrywide, through its trade name America's Wholesale Lender ("AWL"), a Doe defunct Defendant, in the amount of $750,000. [Doc. No. 1-1, Compl. ¶ 12; Doc. No. 4-1, P. & A. Supp. Def.'s Mot. to Dismiss ("Def.'s Mot.") at 2.] The loan was secured by a deed of trust to real property located at 2735 Hornblend Street, San Diego, California 92109 ("Hornblend Property"). The deed of trust lists Castillo as the borrower, AWL as the lender, Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, and CTC Real Estate Services as the trustee. [Doc. No. 1-1, Compl. ¶ 20; Doc. No. 5-1, Request for Judicial Notice ("RJN"), Ex. 1, Deed of Trust.][1] BANA services the loan. [Doc. No. 4-1, Def.'s Mot. at 2.] Plaintiffs allege that

---

[1] Defendants request that the Court take judicial notice of 11 documents: (1) a deed of trust executed by Castillo relating to the Hornblend Property; (2) a quitclaim deed relating to the Hornblend Property; (3) a second quitclaim deed relating to the Hornblend property; (4) an assignment of deed of trust relating to the Hornblend Property; (5) a notice of default and election to sell under deed of trust relating to the Hornblend Property; (6) a notice of trustee's sale relating to the Hornblend Property; (7) a notice of pendency of action relating to the Hornblend Property; (8) the docket of Castillo's bankruptcy petition, 12-00520-MM7 ("Bankruptcy Action"); (9) the debtor's original schedules in the Bankruptcy Action, filed on January 31, 2012; (10) the amended debtor's schedules in the Bankruptcy Action, filed on May 8, 2012; and (11) the Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement ("SPA") between BANA and the Federal National Mortgage Association ("Fannie Mae"), executed on January 25 and 26, 2010. [Doc. No. 5, RJN.]

Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Courts may take judicial notice of documents that are matters of public record or are quasi-public documents. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001); Del Puerto Water Dist. v. U.S. Bureau of Reclamation, 271 F.Supp.2d 1224 (E.D. Ca. 2003) (holding that Senate and House reports, water permit applications, and copies of Bureau reports are public or quasi-public records). A court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading . . . in ruling on a Rule 12(b)(6) motion to dismiss." Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (quoting Branch v. Tunnell, 14 F.3d 449 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002)).

Because Exhibits 1 through 7 are recorded in the Official Records of San Diego County, the Court may take judicial notice of these documents as they are matters of public record. Therefore, their authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201(b). The Court also takes judicial notice of Exhibits 8 through 10 which are public court records. See Reyn's Pasta Bella, LLC v. Visa USA, Inc.,

during the process of applying for the loan, agents of AWL deceived Castillo by processing the loan using falsely inflated income for Castillo, not verifying her true income, and preventing Castillo from understanding her rights. [Doc. No. 1-1, Compl. ¶ 13.] Plaintiffs allege that BNYM is the successor in interest to AWL, and that it therefore incurs all liability for AWL. [Id. ¶ 39.]

Defendants allege in their motion to dismiss that subsequently, on December 4, 2006, Castillo recorded a quitclaim deed transferring her interest in the Hornblend Property to the Trust. [Doc. No. 4-1, Def.'s Mot. at 2; Doc. No. 5-1, RJN, Ex. 2, Quitclaim Deed.] Defendants further allege in their motion that on February 28, 2007, the Trust recorded another quitclaim deed transferring its interest in the Hornblend Property to Group Enterprise Management, LLC ("Group Enterprise"). [Doc. No. 4-1, Def.'s Mot. at 2; Doc. No. 5-1, RJN, Ex. 3, Quitclaim Deed.] Plaintiffs argue in their reply to Defendants' motion that they are unaware of the transfer to Group Enterprises and that they did not authorize this transfer. [Doc. No. 8, Pl.'s Reply to Def.'s Mot. at 3]. On July 19, 2011, MERS assigned its interest in the deed of trust to BNYM in an assignment of deed of trust. [Doc. No. 5-1, RJN, Ex. 4, Assn. of Deed of Trust.]

Plaintiffs allege in their complaint that it became difficult for them to make the mortgage payments due on the loan, and that they attempted to refinance or modify the terms of the loan. Plaintiff Castillo alleges that Defendants would not discuss refinancing or modifying the terms of the loan with her. [Doc. No. 1-1, Compl. ¶ 21.] Plaintiffs allege that BNYM participates in the federal government's Home Affordable Modification Program ("HAMP"), which obligates it to consider Plaintiffs for a loan modification. [Doc. No. 1-1, Compl. ¶¶ 30-32, 70-72.] In their motion, Defendants clarify that BANA, and not BNYM signed the SPA to participate in HAMP. [Doc. No. 4-1, Def.'s Mot. at 12-13 & n.3; Doc. No. 5-2, Ex. 11, SPA.]

Plaintiffs subsequently defaulted on the loan, and Defendants recorded a notice of default against the Hornblend Property on September 23, 2011. The notice of default showed that Castillo

---

442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding that courts may take judicial notice of court filings); Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (holding that courts may take judicial notice of the docket in related cases). The Court may also take judicial notice of Exhibit 11, the SPA between BANA and Fannie Mae, which is a public record available through the U.S. Department of the Treasury. Moreover, the Court may consider the SPA, which is not attached to the pleading, because its contents are alleged in the complaint and Plaintiffs do not question its authenticity. Accordingly, the Court **GRANTS** Defendants' request for judicial notice.

1  was $134,586.23 in arrears as of September 22, 2011.  [Id.; Doc. No. 5-1, RJN, Ex. 5, Notice of

2  Default.]  Defendants subsequently filed a notice of trustee's sale on December 27, 2011, setting a

3  sale date of January 18, 2012.  [Doc. No. 1-1, Compl. ¶ 21; Doc. No. 5-1, RJN, Ex. 6.]

4        Defendants allege that on January 17, 2012, Castillo filed for Chapter 7 bankruptcy in the

5  U.S. Bankruptcy Court for the Southern District of California.  Defendants also allege that the

6  bankruptcy action remains open and that the scheduled sale has not occurred due to an automatic

7  stay.  [Doc. No. 4-1, Def.'s Mot. at 3; Doc. No. 5-1, RJN, Ex. 7.]

8        On June 25, 2012, Plaintiffs filed a complaint in state court against Defendants and

9  recorded a *lis pendens* against the Hornblend Property.  [Doc. No. 1-1, Compl.; Doc. No. 1-2,

10  Notice of Pendency of Action.]  On July 25, 2012, Defendants removed the action to this Court on

11  the basis of federal question jurisdiction and supplemental jurisdiction.  [Doc. No. 1, Notice of

12  Removal.]  In their complaint, Plaintiffs allege ten causes of action for:  (1) fraud in origination of

13  loan; (2) wrongful foreclosure in violation of California Civil Code § 2923.5; (3) breach of

14  contract; (4) declaratory relief; (5) breach of implied covenant of good faith and fair dealing; (6)

15  rescission; (7) injunctive relief; (8) unfair and deceptive business act practices; (9) predatory

16  lending and violation of California Business and Professions Code § 17200; and (10) quiet title.

17  [Doc. No. 1-1, Compl.]

18

19  **DISCUSSION**

20  **I.      Plaintiffs' Motion to Remand for Lack of Subject Matter Jurisdiction**

21        The Court first addresses Plaintiffs' motion to remand.  [Doc. No. 6, Pl.'s Mot. to

22  Remand.]  "The Supreme Court has instructed lower courts to resolve jurisdictional issues before

23  reaching the merits of a case."  Rivera v. R.R. Retirement Bd., 262 F.3d 1005, 1008 (9th Cir.

24  2001) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (rejecting doctrine of

25  "hypothetical jurisdiction")).  "Without jurisdiction the court cannot proceed at all in any cause.

26  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to

27  the court is that of announcing the fact and dismissing the cause."  Steel Co., 523 U.S. at 94

28  (internal quotation marks omitted).  Therefore, the Court must first determine if it has subject

1  matter jurisdiction before proceeding to the merits of this case.

2  An action is removable to federal court only if it might have been brought there originally. 3 See 28 U.S.C. § 1441(a). Federal courts are courts of limited jurisdiction and as such "possess 4 only that power authorized by Constitution and statute, which is not to be expanded by judicial 5 decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations 6 omitted). The court must presume that a case lies outside of its limited jurisdiction, and the burden 7 of establishing jurisdiction is on the party asserting it. Id. Lack of subject matter jurisdiction can 8 be raised at any time by any party or *sua sponte* by the court. Csibi v. Fustos, 670 F.2d 134, 136 9 n.3 (9th Cir. 1982).

10  "[D]istrict courts shall have original jurisdiction of all civil actions arising under the 11 Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The "federal question" 12 must be disclosed on the face of the complaint. Sparta Surgical Corp. v. Nat'l Ass'n of Securities 13 Dealers, Inc., 159 F.3d 1209, 1211 (9th Cir. 1998). Under the longstanding well-pleaded 14 complaint rule, this means that jurisdiction is proper "only when the plaintiff's statement of his 15 own cause of action shows that it is based upon [federal law]." Vaden v. Discover Bank, 556 U.S. 16 49, 60 (2009) (internal quotation omitted).

17  In determining whether federal jurisdiction attaches to a state law claim that is predicated 18 on violations of federal law, a court must examine whether the "state-law claim necessarily raise[s] 19 a stated federal issue, actually disputed and substantial, which a federal forum may entertain 20 without disturbing any congressionally approved balance of federal and state judicial 21 responsibilities." Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 22 314 (2005). "It is not enough that the court may have to interpret federal laws or regulations. 23 'Arising under' jurisdiction exists only 'where the vindication of a right under state law 24 necessarily turn[s] on some construction of federal law.'" William Schwarzer et al., CAL. PRAC. 25 GUIDE: FED. CIV. PRO. BEFORE TRIAL § 2:108 (2009) (quoting Merrell Dow Pharmaceuticals Inc. 26 v. Thompson, 478 U.S. 804, 808 (1986)).

27  Plaintiffs argue that their complaint contains no claims that arise under federal law. They 28 argue that therefore, the action should be remanded to state court. [Doc. No. 6-1, P. & A. Supp.

1  Pl.'s Mot. to Remand.] Defendants argue that Plaintiffs' "breach of contract claim is premised on
2  an agreement between Bank of America and the United States that explicitly provides it must be
3  interpreted according to federal common law." [Doc. No. 11, Def.'s Opp. to Mot. to Remand at 1.]
4  They also argue that Plaintiffs' claim for declaratory relief is a "request for a declaration that
5  various laws—including two federal statutes—were violated by defendants." Defendants assert
6  that supplemental jurisdiction is proper over the remaining state law claims because all of
7  Plaintiffs' claims arise from a common nucleus of operative facts. [Id.] The Court will address
8  each of these potential bases for federal jurisdiction in turn.

9      **A.    Plaintiffs' Breach of Contract Claim**

10      Plaintiffs' breach of contract claim alleges that Defendants breached their obligations under
11  the SPA, to which Plaintiffs are not a party, by failing to consider Plaintiffs for a loan
12  modification. Plaintiffs argue that they are intended beneficiaries of the SPA. [Doc. No. 1-1,
13  Compl. ¶¶ 70-75.] Defendants contend that Plaintiffs are not third-party beneficiaries of the SPA
14  and therefore have no right to enforce its terms. [Doc. No. 4-1, Def.'s Mot. at 12-14.]

15      In an action concerning alleged third-party beneficiaries under the Pharmaceutical Pricing
16  Agreement ("PPA"), the Ninth Circuit found that the action raised a federal question because the
17  PPA is "a contract[] entered into pursuant to federal law and to which the government is a party,
18  and which expressly provides that it shall be construed in accordance with Federal common law."
19  County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237, 1243-44 (9th Cir. 2009), rev'd on other
20  grounds by Astra USA, Inc. v. Santa Clara County, 131 S. Ct. 1342 (2011).

21      Similarly, the instant action involves a breach of contract claim that is premised on a
22  contract, the SPA, between BANA and the United States, operating through Fannie Mae. Further,
23  the SPA explicitly provides that it is governed by federal law. [Doc. No. 5-2, RJN, Ex. 11, SPA ¶
24  11.] In order to address this claim, the Court must determine whether Plaintiffs are third-party
25  beneficiaries, which will require the Court to address a question of federal law. Therefore,
26  Plaintiffs' breach of contract claim arises under federal law as required by § 1331 because
27  Plaintiffs' right to relief necessarily depends on the resolution of a substantial question of federal
28  law. See Copeland-Turner v. Wells Fargo Bank, N.A., No. CV-11-37-HZ, 2011 U.S. Dist. LEXIS

1  28093, at *13 (D. Or. March 17, 2011) (holding that based on <u>Astra USA, Inc.</u>, a claim by plaintiff
2  that he is the third-party beneficiary of a contract between Wells Fargo and the federal government
3  would meet the "arising under" prong of § 1331); <u>Phipps v. Wells Fargo Bank, N.A.</u>, No. CV F
4  10-2025 LJO SKO, 2011 U.S. Dist. LEXIS 10550, at *6 (E.D. Cal. Jan. 27, 2011) ("Federal law
5  controls the interpretation of a contract entered into pursuant to federal law and to which the
6  United States is a party."); <u>Marques v. Wells Fargo Home Mortg., Inc.</u>, No. 09-cv-1985-L(RBB),
7  2010 U.S. Dist. LEXIS 81879 (S.D. Cal. Aug. 12, 2010) (same).

8  **B.    Plaintiffs' Claim for Declaratory Relief**

9  "[W]hen a claim can be supported by alternative and independent theories–one of which is
10 a state law theory and one of which is a federal law theory–federal question jurisdiction does not
11 attach because federal law is not a necessary element of the claim." <u>Rains v. Criterion Sys., Inc.</u>,
12 80 F.3d 339, 346 (9th Cir. 1996). Plaintiffs' claim for declaratory relief seeks a declaration that
13 the pending foreclosure sale is "in violation of Federal HOLA [Home Owners Loan Act]
14 provisions, Federal Mortgage Assistance Programs, in effect, TILA [Truth in Lending Act]
15 provisions, and State of California mortgage assistance programs." [Doc. No. 1-1, <u>Compl.</u> ¶ 77]
16 Plaintiffs' request for declaratory relief does not necessarily turn on construction of federal law
17 because it may be sustained by a declaration that the pending foreclosure sale is in violation of
18 California mortgage assistance programs. <u>See</u> <u>Merrell Dow Pharmaceuticals</u>, 478 U.S. at 808.
19 Because Plaintiffs' request for declaratory relief can be supported by an alternate and independent
20 state law theory, the Court finds that this claim does not support federal question jurisdiction.
21       Because the Court finds that Plaintiffs' breach of contract claim supports federal question
22 jurisdiction, the Court **DENIES** Plaintiffs' motion to remand.
23
24 **II.    Defendants' Motion to Dismiss**
25       A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests
26 the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); <u>Navarro v.</u>
27 <u>Block</u>, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in
28 the complaint as true, and must construe them and draw all reasonable inferences from them in

1  favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th
2  Cir.1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual
3  allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its
4  face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility
5  when the plaintiff pleads factual content that allows the court to draw the reasonable inference that
6  the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
7  (citing Twombly, 550 U.S. at 556).

8  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'
9  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of
10 action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286
11 (1986)) (alteration in original). A court need not accept "legal conclusions" as true. Iqbal, 556
12 U.S. at 678. In spite of the deference the court is bound to pay to the plaintiff's allegations, it is
13 not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not
14 alleged or that defendants have violated the . . . laws in ways that have not been alleged."
15 Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526
16 (1983). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it
17 stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556
18 U.S. at 1949 (quoting Twombly, 550 U.S. at 678).

19 In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the
20 complaint for additional facts. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).
21 Further, a court generally may not consider materials beyond the pleadings when ruling on a Rule
22 12(b)(6) motion. However, a court "may take judicial notice of matters of public record . . . as
23 long as the facts noticed are not subject to reasonable dispute." Skilstaf, Inc. v. CVS Caremark
24 Corp., 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

25     **A.**     **Plaintiffs' Breach of Contract Claim**

26 The Court will first address Plaintiffs' third cause of action for breach of contract, which
27 supplies federal question jurisdiction. Plaintiffs allege that BNYM breached the SPA, by its
28 failure to consider Plaintiff Castillo for an affordable loan modification. [Doc. No. 1-1, Compl. ¶¶

1  71-72.] Plaintiffs argue that as eligible borrowers, they are intended beneficiaries of the SPA,
2  entered into between BNYM and the U.S. government, operating through Fannie Mae.  [Id. ¶¶ 70,
3  74.]  Defendants clarify that BANA, and not BNYM, signed the SPA.  [Doc. No. 4-1, Def.'s Mot.
4  at 12-13 & n.3; Doc. No. 5-2, Ex. 11, SPA.]  Defendants argue that Plaintiffs are not third-party
5  beneficiaries of the SPA and that therefore, they have no right to enforce its terms.  [Doc. No. 4-1,
6  Def.'s Mot. at 12-14.]

7  **"**To sue as a third-party beneficiary of a contract, the third party must show that the
8  contract reflects the express or implied intention of the parties to the contract to benefit the third
9  party." Klamath Water Users Protective Assn. v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 2000).
10  The contract need not specifically identify the intended beneficiary, but the third party must fall
11  within a class clearly intended by the parties to benefit from the contract.  Id.

12  "Demonstrating third-party beneficiary status in the context of a government contract is a
13  comparatively difficult task," Astra USA, Inc., 588 F.3d at 1244, because parties that benefit from
14  a government contract are generally assumed to be incidental beneficiaries, and may not enforce
15  the contract absent a clear intent to the contrary.  Klamath, 204 F.3d at 1211.  A court must
16  examine the "precise language of the contract for a 'clear intent' to rebut the presumption that the
17  [third parties] are merely incidental beneficiaries."  Orff v. United States, 358 F.3d 1137, 1145
18  (9th Cir. 2004).  In Klamath, although the Ninth Circuit found that the contract in question was
19  entered into with the third party in mind, nothing in the contract demonstrated a clear intention to
20  grant the third party enforceable rights.  Therefore, the Court found that the third party was not a
21  third-party beneficiary.  Klamath, 204 F.3d at 1211-12.  The Court held that "the recitation of
22  constituencies whose interest bear on a government contract does not grant these incidental
23  beneficiaries enforceable rights.  Vague, hortatory pronouncements in the [c]ontract, by
24  themselves, are insufficient to support [the third party's] claims that the United States and the
25  [contracting party] intended to assume a direct contractual obligation to [the third party]."  Id. at
26  1212.

27  Similarly, although the SPA was entered into with borrowers in mind for the purpose of
28  minimizing foreclosures, Plaintiffs have not demonstrated clear intent in the contract to confer

third party enforceable rights on borrowers. Although Plaintiffs argue that eligible borrowers are identified in the contract and may receive performance from Defendant, these statements are insufficient to show an intent to confer enforceable rights on borrowers. See id. at 1212. In fact, the SPA in ¶ 11(E) provides that the contract "shall inure to the benefit of . . . the parties to the Agreement . . . ." [Doc. No. 5-2, RJN, Ex. 10-11.]

Moreover, "numerous courts have determined that individual borrowers do not have standing to sue under a HAMP SPA because they are not intended third-party beneficiaries of the SPA." Velasco v. Aurora Loan Serv. LLC, No. 2:11-cv-04784, 2012 U.S. Dist. LEXIS 21490, at *6-7 (C.D. Cal. Feb. 21, 2012) (quoting Cleveland v. Aurora Loan Serv., LLC, No. C 11-0773, 2011 U.S. Dist. LEXIS 55168, at *11 (N.D. Cal. May 24, 2011) (collecting cases)); see also Hoffman v. Bank of Amer., N.A., No. C 10-2171, 2010 U.S. Dist. LEXIS 70455, at *11-12 (N.D. Cal. June 30, 2010) (collecting case). For example, in Hoffman, the court determined that the borrower was "an incidental and not an intended beneficiary to the HAMP servicer's agreement" and that therefore the borrower did not have enforceable rights under the HAMP SPA. Id. (citing Klamath, 204 F.3d 1206 and distinguishing Astra USA, Inc., 588 F.3d 1237). Even though the Hoffman court recognized that HAMP's intention was to minimize foreclosures and that the SPA was entered into with third parties in mind, the court held that this was insufficient to show that the contract was made with the clear intention to grant the third party enforceable rights. Hoffman, 2010 U.S. Dist. LEXIS, at *11-12.

Therefore, as borrowers, Plaintiffs lack standing to pursue their breach of contract claim based on the SPA between BANA and Fannie Mae because they are not intended third-party beneficiaries of the contract. Accordingly, Plaintiffs' third cause of action for breach of contract fails to state a claim and is **DISMISSED** with prejudice.

**B.    Supplemental Jurisdiction over State Law Claims**

With Plaintiffs' sole claim supplying federal jurisdiction dismissed, only state law claims remain. The Court has supplemental jurisdiction over these claims. Under 28 U.S.C. § 1367(c)(3), however, the Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction." A district court's

1  decision whether to exercise supplemental jurisdiction after dismissing every claim over which it
2  had original jurisdiction is "purely discretionary." <u>Carlsbad Tech., Inc. v. HIF Bio, Inc.</u>, 556 U.S.
3  636, 639 (2009); <u>accord</u> <u>Lacey v. Maricopa Cnty.</u>, 649 F.3d 1118, 1137 (9th Cir. 2011).  In
4  exercising its discretion, the court may look to a host of factors, "including the circumstances of
5  the particular case, the nature of the state law claims, the character of the governing state law, and
6  the relationship between the state and federal claims." <u>City of Chicago v. Int'l College of
7  Surgeons</u>, 522 U.S. 156, 173 (1997); <u>see also</u> <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S.
8  715, 726 (1966).  In the usual case, where federal claims are dismissed before trial, "the balance of
9  factors ... will point toward declining to exercise jurisdiction over the remaining state law claims."
10 <u>Gini v. Las Vegas Metro. Police Dep't</u>, 40 F.3d 1041, 1046 (9th Cir. 1994) (internal quotation
11 omitted); <u>accord</u> <u>Religious Tech. Ctr. v. Wollersheim</u>, 971 F.2d 364, 367-68 (9th Cir. 1992) (per
12 curiam); <u>Scholar v. Pacific Bell</u>, 963 F.2d 264, 268 n.4 (9th Cir. 1992).
13      In this case, looking at the balance of factors—including the fact that this case is still in its
14 infancy and that the present motions are the only motions that have been filed to date—the Court
15 believes it is more appropriate to decline to exercise supplemental jurisdiction over the remaining
16 state law claims and to remand those claims to state court.  <u>See</u> <u>Lacey</u>, 649 F.3d at 1137; <u>Gini</u>, 40
17 F.3d at 1064.  Accordingly, the Court **REMANDS** Plaintiffs' remaining state law claims.

19 **III.    Defendants' Motions to Strike and to Expunge the *Lis Pendens***
20      In addition to their motion to dismiss, Defendants also move to strike portions of Plaintiffs'
21 complaint and to expunge the *lis pendens*.  [Doc. No. 4, <u>Def.'s Mtns.</u>]  Because the Court
22 dismisses Plaintiffs' breach of contract claim and declines to exercise jurisdiction over Plaintiffs'
23 remaining state law claims, the Court **DENIES AS MOOT** Defendants' motions to strike and to
24 expunge the *lis pendens*.

## CONCLUSION

26      For the reasons above, the Court:
27      1.     **DENIES** Plaintiffs' motion to remand;
28      2.     **GRANTS** in part Defendants' motion to dismiss and **DISMISSES WITH**

1 | **PREJUDICE** Plaintiffs' third cause of action for breach of contract;

2 | 3. **REMANDS** to the San Diego Superior Court Plaintiffs' first, second, and fourth through tenth causes of action; and

4 | 4. **DENIES AS MOOT** Defendants' motions to strike and to expunge the *lis pendens*.

**IT IS SO ORDERED.**

**DATED:** October 9, 2012

**IRMA E. GONZALEZ**
**United States District Judge**